**SO ORDERED: April 30, 2013.**



_____
**Frank J. Otte
United States Bankruptcy Judge**

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF INDIANA
## TERRE HAUTE DIVISION

| | | |
|---|---|---|
| IN RE: | ) | Chapter 7 |
| | ) | |
| MARY CATHERINE PIERCE, | ) | Case No. 12-80046-FJO-7 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| DAVID STALKER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Adversary Proceeding No. 12-58019 |
| | ) | |
| MARY CATHERINE PIERCE, | ) | |
| | ) | |
| Defendant. | ) | |

### FINDINGS OF FACT AND CONCLUSIONS OF LAW
### ON MOTION FOR SUMMARY JUDGMENT

This matter is before the Court on the motion of the plaintiff, David Stalker ("Stalker"), for summary judgment in his favor. The Court held a hearing on Stalker's motion on March 14, 2013. The parties appeared by counsel.

51886491-1

The Court, having considered Stalker's motion, the defendant's response, Stalker's reply, the pleadings on file, the other materials submitted by the parties, and the arguments of counsel, now enters the following findings of fact and conclusions of law, and enters summary judgment in favor of the plaintiff, and against defendant, Mary Catherine Pierce ("Pierce").

## FINDINGS OF FACT

1. On April 19, 2005, Pierce was appointed by the Parke County Circuit Court (the "Trial Court") as guardian over Stalker's person and property. *Stalker v. Pierce (In re the Guardianship of David Stalker)*, 953 N.E.2d 1094, 1098 (Ind. Ct. App. 2011) (hereinafter, the "Appellate Opinion"). At all relevant times, Pierce also served as an appointed member of the Parke County Board of Health (the "Board of Health"). *Id.* at 1097. On November 22, 2005, Stalker petitioned the Trial Court to have his guardianship terminated due to his dissatisfaction with Pierce as his guardian. *Id.* at 1098.

2. Two weeks after Stalker filed his petition to terminate the guardianship, Pierce filed a complaint against Stalker with the Board of Health. *Id.* Pierce did not notify Stalker of her intention to file a complaint with the Board of Health. *Id.* at 1106. Pierce also did not seek court approval to disclose information she obtained about Stalker and Stalker's home while serving as his court-appointed guardian. *Id.*

3. As a result of Pierce's complaint, the Board of Health issued an order requiring Stalker to complete repairs on his home within ten days to avoid penalties or an order to vacate the residence. *Id.* at 1098. Pierce repeatedly interfered with Stalker's efforts to comply with the Board of Health order. The Indiana Court of Appeals found,

> After the Parke County Health Department found his home unfit for human habitation, upon a complaint filed by Pierce, Pierce found Stalker a new apartment in Rockville, ten miles away from his home. While aware of the Health Department's order to get the property cleaned, Pierce also knew that Stalker's only mode of transportation was a bicycle which

>would make traveling back and forth to his home almost impossible in winter and would make compliance with the order difficult.  In addition, Pierce refused to give Stalker the keys to the house until he cleared the outside of his property.

*Id.* at 1103.

4. Pierce falsely "represented to the Trial Court that Stalker's home had been condemned while no such condemnation notice was ever issued by the Health Department." *Id.* at 1104.

5. Stalker repeatedly requested that the Trial Court terminate his guardianship.  On August 31, 2006, the Trial Court held a status hearing to determine whether Stalker's renewed request to terminate the guardianship should be granted.  *Id.* at 1098-99.  Stalker provided evidence to the Trial Court of his substantial progress in cleaning up his yard and the exterior of his home.  *Id.*  The Indiana Court of Appeals found, "At the hearing, Pierce conceded that the yard was 'getting close' to being clean and acknowledged that she would be willing to provide [John] Lapp with access to the home to begin supervising Stalker on his efforts to clean up the interior of the house." *Id.* at 1099.

6. Despite her expressed intentions at the status hearing seven days prior, Pierce unilaterally ordered Stalker's home demolished on September 7, 2006.  *Id.* at 1100.  Stalker's personal property within the home was also destroyed.  *Id.* at 1099.

7. The Indiana Court of Appeals found that (i) Pierce did not seek court approval for the demolition; (ii) Pierce did not attempt to value the real property before its excavation or to inventory Stalker's personal property located in the home; and (iii) Pierce failed to provide any notice to Stalker of the excavation.  Accordingly, as set forth in the Appellate Opinion, the "excavation of his home came as a shock" to Stalker, and he was unable to remove his personal property prior to the destruction of his home.  *Id.* at 1104.  As a direct result of

51886491-1

Pierce's unilateral decision to demolish Stalker's home, the majority of Stalker's personal property was destroyed, including his most sentimental possessions. *Id.* at 1104-05, 1107-08.

8. Subsequently, Pierce petitioned for court approval to sell the vacant land. *Id.* at 1104. The Indiana Court of Appeals found, "Pierce used the proceeds to buy items Stalker explicitly did not want." *Id.*

9. On September 4, 2008, Pierce filed a petition for leave to resign as Stalker's guardian. *Id.* at 1101. On May 18, 2009, Stalker filed objections to Pierce's accounting, alleging that she had breached her fiduciary duty, had failed to act in his best interest, and had denied his due process rights. *Id.* The Trial Court issued its order approving Pierce's accounting over Stalker's objections on April 21, 2010. *Id.* Stalker filed a motion to vacate the court's order and to correct error, which the Trial Court denied on July 23, 2010. *Id.*

10. Stalker appealed the Trial Court's order to the Indiana Court of Appeals. On July 29, 2011, the Indiana Court of Appeals issued the Appellate Opinion holding, (i) "Pierce breached her fiduciary duty to protect, preserve, and properly manage Stalker's property," (ii) Pierce breached "her fiduciary duty of loyalty to Stalker when Pierce's duty as guardian conflicted with her responsibilities as a member of the Board of Health," and (iii) "Pierce, in her capacity as guardian, violated Stalker's due process rights." *Id.* at 1105-06.

11. On January 20, 2012, Pierce filed with this Court her voluntary petition for relief under Chapter 7 of the Bankruptcy Code under Case No. 12-80046-FJO-7.

12. For all purposes herein, "State Court Judgment" will mean and include the determination of the Indiana Court of Appeals as set forth in the Appellate Opinion that Pierce breached her fiduciary duties to Stalker and that Pierce violated Stalker's due process rights. The Indiana Court of Appeals remanded the case back to the Trial Court for a damages

51886491-1

determination, but Pierce filed her Chapter 7 case before the damages determination could be entered. Accordingly, "State Court Judgment" will further mean and include all damages, costs and attorneys' fees that may be granted by the Trial Court or any other court at any time pursuant to the Appellate Opinion.

13. On April 30, 2012, Stalker filed a complaint under Adversary Proceeding No. 12-58109 seeking entry of an order determining that the State Court Judgment is non-dischargeable pursuant to 11 U.S.C. §§ 523 (a)(4) and/or (a)(6).

## CONCLUSIONS OF LAW

Based on the foregoing Findings of Fact, the Court now enters the following Conclusions of Law:[1]

14. This Court has jurisdiction over the subject matter of this adversary proceeding pursuant to 28 U.S.C. § 157 and 28 U.S.C. § 1334.

15. This matter is a core proceeding pursuant to 28 U.S.C. § 157.

16. Venue is proper pursuant to 28 U.S.C. § 1409.

17. Collateral estoppel principles apply to discharge exception proceedings. *Grogan v. Garner*, 498 U.S. 279, 285 n.11 (1991); *Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 321 (7th Cir. 2012).

18. Four elements must be satisfied for collateral estoppel to apply: "(1) the issue sought to be precluded is the same as that involved in a prior action, (2) the issue was actually litigated, (3) determination of the issue was essential to the final judgment, and (4) the party to be estopped was fully represented in the prior action." *Levinson v. United States*, 969 F.2d 260, 265 (7th Cir. 1992). "Collateral estoppel is binding on the bankruptcy court and

---

[1] Any Finding of Fact that is more appropriately characterized as a Conclusion of Law is hereby incorporated by reference in the following Conclusions of Law. Conversely, any Conclusion of Law that is more appropriately characterized as a Finding of Fact is hereby incorporated by reference in the foregoing Findings of Fact.

51886491-1

precludes litigation of [the] factual issues" already determined in the prior proceeding. *Brown v. Felsen*, 442 U.S. 127, 139 (1979); *Wallace v. Wallace*, 840 F.2d 762, 765 (10th Cir. 1988).

19. The undisputed facts required to establish a claim under 11 U.S.C. §§ 523(a)(4) and (a)(6) already have been litigated in the state court and were essential to the State Court Judgment. Pierce was fully represented during the state court proceedings. Accordingly, Pierce is collaterally estopped from challenging the findings set forth in the Appellate Opinion in this proceeding.

### The State Court Judgment Represents a Debt Incurred Through Defalcation by a Guardian and is Nondischargeable Pursuant to 11 U.S.C. § 523(a)(4)

20. "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for fraud or defalcation while acting in a fiduciary capacity." 11 U.S.C. § 523(a)(4).

21. To establish nondischargeability under 11 U.S.C. § 523(a)(4), Stalker must establish by a preponderance of the evidence (1) that Pierce acted as a fiduciary to Stalker at the time the debt was created, and (2) that the debt was caused by fraud or defalcation. *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 766 (7th Cir. 2011); *see also Grogan*, 498 U.S. at 291 (holding that the preponderance of the evidence standard applies to exceptions to dischargeability under Section 523).

22. Defalcation requires "something more than negligence or mistake but less than fraud." *Berman*, 629 F.3d at 766 n.3; *Meyer v. Rigdon*, 36 F.3d 1375, 1385 (7th Cir. 1994).

23. To prove defalcation under 11 U.S.C. § 523(a)(4), Stalker need only establish that Pierce's actions as a fiduciary were objectively reckless, as measured by "what a reasonable person in the debtor's position knew or reasonably should have known." *Office of Thrift Supervision v. Felt (In re Felt)*, 255 F.3d 220, 226 (5th Cir. 2001); *accord Bullock v.*

51886491-1

*BankChampaign (In re Bullock)*, 670 F.3d 1160, 1166 (11th Cir. 2012). "The objective standard charges the debtor with knowledge of the law without regard to an analysis of his actual intent or motive." *Felt*, 225 F.3d at 226.

24. The facts as found by the Indiana Court of Appeals satisfies the standard for nondischargeability pursuant to 11 U.S.C. § 523(a)(4). Pierce's actions constitute defalcation while acting in a fiduciary capacity.

25. Pierce was acting in a fiduciary capacity at all relevant times. Pursuant to Indiana Code § 29-3-1-6, a guardian is a "person who is a fiduciary and is appointed by a court to be a guardian or conservator responsible as the court may direct for the person or the property of an incapacitated person or a minor." *See also Commonwealth Trust Co. of Pittsburgh v. Bradford*, 297 U.S. 613, 619 (1936) (acknowledging that guardians are fiduciaries).

26. "A guardian has a statutory duty to manage the property for the ward's best interest, and he is responsible to protect and preserve the property of the protected person. Additionally, the guardian must conserve any property of the protected person in excess of the protected person's current needs." *Appellate Opinion* at 1103 (citing IND. CODE § 29-3-8-3(2)). Consequently, as Stalker's court-appointed guardian, Pierce was entrusted with the care of both Stalker and his property.

27. Despite Pierce's statutory obligation to protect, preserve, and properly manage Stalker's property, Pierce's conduct while acting as Stalker's guardian resulted in the loss of all of Stalker's real property and virtually all of his personal property. *Id.* at 1104-05. Pierce ordered the unilateral destruction of Stalker's property without the requisite court approval. *Id.* In addition, Pierce "failed to give [Stalker] any notice of the destruction of his home and property." *Id.* This failure deprived Stalker of due process and resulted in Stalker's (i) inability

to file an objection with the Trial Court or to remove his personal property from the home before the demolition, (ii) significant mental anguish in the loss of Stalker's home and his most sentimental possessions and family heirlooms, and (iii) temporary homelessness. *Id.* Pierce also disclosed information she obtained about Stalker's home to the Board of Health while acting as his guardian. *Id.* at 1106. Finally, Pierce applied the sales proceeds in direct contravention of Stalker's expressed wishes. *Id.* at 1104.

28. The Indiana Court of Appeals found, "Pierce actively started to work against [Stalker], taking unilateral decisions without keeping Stalker's best interests at heart. . . . We are dismayed at her callousness to demolish Stalker's property without getting a formal appraisal, without notifying Stalker or the court, and most importantly without providing him with an opportunity to, at the very least, collect his sentimental possessions. . . . Pierce's unwarranted and unreasonable decisions, made contrary to Stalker's best interests, resulted in emotional upheaval and homelessness." *Id.* at 1105.

29. The pattern of behavior outlined in the Appellate Opinion expressly reflects that Pierce, at a minimum, acted in objectively reckless disregard of her fiduciary responsibilities and the resulting consequences to her ward and his property. *See Hawkins v. Thomas (In re Hawkins)*, 478 B.R. 468, 473-73 (Bankr. N.D. Ga. 2012). Pierce's sustained "dereliction of duty" indicates an objectively willful and reckless disregard of the consequences of her actions. *Id.*

30. As a result of Pierce's actions, Stalker has suffered damages, including without limitation, the loss of value of his real and personal property and emotional distress.

31. As set forth in the Appellate Opinion, Pierce acted in reckless disregard of her fiduciary duties to Stalker, and her conduct was objectively reckless so as to constitute

51886491-1

defalcation within the meaning of 11 U.S.C. § 523(a)(4).  Accordingly, the State Court Judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(4).

### The State Court Judgment Resulted from a Willful and Malicious Injury and is Nondischargeable Pursuant to 11 U.S.C. § 523(a)(6)

32. "A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt . . . for willful and malicious injury by the debtor to another entity or to the property of another entity."  11 U.S.C. § 523(a)(6).

33. To state a claim under 11 U.S.C. § 523(a)(6), Stalker must establish the following elements by a preponderance of the evidence: "(1) a tortious injury, (2) committed willfully, and (3) committed maliciously." *Birriel v. Odeh (In re Odeh)*, 431 B.R. 807, 817 (Bankr. N.D. Ill. 2010); *see also Grogan*, 498 U.S. at 291 (holding that the preponderance of the evidence standard applies to exceptions to dischargeability under Section 523).

34. For purposes of 11 U.S.C. § 523(a)(6), a "willful" injury is one arising out of the debtor's intentional act and is defined as "deliberate or intentional." *Kawaahau v. Geiger*, 523 U.S. 57, 61-62 (1998); *Forrester v. Staggs (In re Staggs)*, 178 B.R. 767, 772-73 (Bankr. N.D. Ind. 1994).  "Malicious" means "a wrongful act done without just cause or excuse, which necessarily produces harm.  It does not require ill will, spite or personal hatred." *Staggs*, 178 B.R. at 773.

35. A willful and malicious injury "is one that the injurer inflicted knowing he had no legal justification and either desiring to inflict the injury or knowing it was highly likely to result from his act." *Jendusa-Nicolai*, 677 F.3d at 324.

36. Pierce willfully and maliciously injured Stalker and Stalker's property. Pierce acted in conscious disregard of her fiduciary duties to Stalker in circumstances in which injury was substantially certain to result from her intentional actions.

51886491-1

37. Pierce intentionally and wrongfully ordered the excavation of Stalker's home without (i) removing his personal property, (ii) seeking court approval, (iii) ordering an appraisal of the property, or (iv) providing the requisite notice to Stalker. Further, Pierce intentionally applied the proceeds from the sale of the vacant land in direct contravention of Stalker's expressed desires.

38. Pierce's actions resulted in the destruction of Stalker's home and personal property, homelessness, and emotional distress.

39. Pierce inflicted these injuries with the knowledge that she did not have a legal justification for (i) making misrepresentations to the Trial Court regarding the condemnation of the property, (ii) actively working against Stalker's best interests in direct contravention of her statutory duties, (iii) violating Stalker's due process right to notice, (iv) failing to seek court approval before destroying Stalker's property, and (v) failing to get an appraisal of Stalker's property or providing the opportunity for the removal of Stalker's personal property.

40. Pierce took intentional actions with the knowledge that Stalker and his property would be injured. Pierce's actions were wrongful and done without just cause. Pierce's actions thus resulted in a willful and malicious injury of Stalker and his property. Accordingly, the State Court Judgment is non-dischargeable pursuant to 11 U.S.C. § 523(a)(6).

### CONLUSION

This Court will, by separate entry consistent with these findings of fact and conclusions of law, enter judgment whereby the Court grants Plaintiff's motion for summary judgment and orders that the State Court Judgment shall be nondischargeable pursuant to 11 U.S.C. §§ 523(a)(4) and (a)(6).

###

51886491-1